## RITCHIE BROS. AUCTIONEERS INT'L, Appellant,

v.

## E & A CONTRACTING, INC., and John D. Engle, Appellee.

Superior Court of Pennsylvania.

Argued Nov. 12, 1997.

Filed Feb. 3, 1998.

David E. White, Pittsburgh, for appellant.

Sandra W. Upor, Somerset, for appellees.

Before JOHNSON, EAKIN and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the entry of summary judgment in appellees' favor. Appellant raises three questions for our review of which we find the first two relevant and restate as follows: whether or not a sales representative of an auction company has to be licensed as an auctioneer in order to execute a valid contract on behalf of the auction company, and whether a contract for the performance of auctioning services is rendered void because the sales representative who executed the contract in behalf of a licensed auction company was not himself licensed under the appropriate Act? We vacate and remand for a continuation of proceedings.

The relevant facts of the present case are not in dispute. Ritchie Brothers Auctioneers International (Ritchie Bros.) is a limited partnership engaged in the auction business. Ritchie Bros. provides auctioneering services and sets up and conducts auctions for parties interested in liquidating various types of property, primarily heavy equipment and work trucks. Although Ritchie Bros. has conducted auctions in Pennsylvania for approximately 12 years, it is not a Pennsylvania based company, rather Ritchie Bros. has its worldwide headquarters in Vancouver, British Columbia, Canada, and its main United States office in the Denver, Colorado area.

At the time of the transaction in question Charles Baer was a "sales representative" for Ritchie Bros. with an office located in Greater Pittsburgh and a territory that included Western Pennsylvania, Ohio and West Virginia. Mr. Baer was principally responsible for finding parties interested in liquidating equipment at auction. After locating interested parties Mr. Baer would set up the details for the holding of an auction and would prepare and execute contracts for the conducting of an auction. Ritchie Bros. would then send a licensed auctioneer to conduct the auction. Prior to conducting an auction in Pennsylvania, Ritchie Bros. would apply and receive "special licenses" as specified in 63 P.S. § 734.3(i).

In all essential matters the above approach was followed in the present case. Mr. Baer was contacted by appellee, John Engle, a principal of E & A Contracting. Mr. Engle was interested in liquidating some of E & A's equipment at auction and had become aware that Ritchie Bros. was planning an auction in the area. Mr. Baer inspected E & A's equipment and gave Mr. Engle a rough estimate of what he could expect to receive at auction

for the equipment. After Mr. Baer's appraisal a contract was executed between Ritchie Bros. and E & A Contracting for the auctioning of the equipment at Imperial, Pennsylvania, with appellee Engle signing for E & A, and individually as guarantor, and Mr. Baer signing for Ritchie Bros.

The contract was executed on May 4, 1994, with an anticipated auction date of June 9, 1994; however, prior to the auction date E & A independently, and without Ritchie Bros. permission, sold the equipment that was subject to the auction agreement. Ritchie Bros., through counsel, sent a letter to E & A indicating that Ritchie Bros. believed that E & A had breached its agreement and was liable for a commission to Ritchie Bros. Appellees refused to make payment and Ritchie Bros. filed suit in the Court of Common pleas of Somerset County.

After various pleadings had been filed appellees filed a motion for summary judgment arguing that the contract was unenforceable because Charles Baer was not licensed as an auctioneer in Pennsylvania and had signed the contract in Ritchie Bros. behalf and otherwise done acts prohibited by statute to unlicensed individuals. Appellees' relied, in part, upon § 734.30 of the Auctioneer and Auction Licensing Act, which states:

> No action or proceeding may be instituted and no recovery may be had in any court of this Commonwealth by any individual, partnership, association or corporation for compensation for any act done or services rendered the doing or rendering of which is prohibited under this Act to other than persons licensed by the board unless the individual, partnership, association or corporation was licensed at the time of doing the act or rendering of service.

The court, concluding that Mr. Baer had performed acts prohibited by the statute to other than licensed individuals, granted appellees' motion. The present appeal followed.

In deciding this case we are guided primarily by what we deem to be a "commonsensical" interpretative approach as the language of the statute could be capably argued to support either side's proffered conclusion and neither side has provided any caselaw interpreting this particular Act. At issue is whether or not an auction company violates the Auctioneer and Auction Licensing Act 63 P.S. § 734.1 et seq., by virtue of using individuals, unlicensed to conduct auctions, to arrange for the conducting of an auction. Since we do not believe the Act is violated by this practice we vacate the order appealed from and remand for a continuation of proceedings.

The relevant portion of the Auctioneer and Auction Licensing Act, 63 P.S. § 734.3, states:

> It is unlawful for any person to engage in or carry on the profession of auctioneer, to conduct a sale at auction, to hold himself out as an auctioneer or as an apprentice auctioneer or to offer to conduct sales at an auction in this Commonwealth without first obtaining from the board a license as an auctioneer or apprentice auctioneer. Any member, officer or employee of a partnership, association or corporation who attempts to sell at auction or who is actively engaged in the auction profession must have a license as an auctioneer or apprentice auctioneer.

Although it could be argued that the activities of Charles Baer in soliciting Ritchie Brothers auctioning services to businesses and individuals in need of liquidating property rendered him "actively engaged in the auction profession," as set forth in the Act, we do not think that the Act was intended to require every employee of an Auction company who might perform tasks in furtherance of the conducting of an auction business to be licensed under the Act.

One reason we reach this conclusion is that there are only two classifications of licensees provided for in the act, an auctioneer and apprentice auctioneer, the requirements of which focus on the actual conducting of auctions. The licensure requirements for auctioneer require actual participation in no less than 30 auctions as an apprentice in an apprenticeship that lasts two or more years. There are no licenses provided for the performance of activities in support of conducting an auction such as solicitation and administrative

functions. Additionally, an auctioneer may not employ more than one apprentice auctioneer. *Id.* At § 734.3(d). Thus, even if it were assumed that one needed a license under the act to assist in the running of an auction company, an auctioneer or auction company would either be limited to only one employee to perform such tasks, be required to license numerous individuals as auctioneers, which, of course requires a time-consuming apprenticeship, or would be required to essentially run a one-man show without administrative help.[1] This seems to be an unrealistic and overly burdensome requirement.

Although we can find no specific provisions in the Act which explicitly include or exclude someone like Mr. Baer from the licensing requirements of the Act, we believe certain other provisions in the Act support the conclusion stated above. In § 734.3(g), the Act states:

If the applicant for a license is a partnership, association or a corporation, then a member of the partnership or association or an officer of the corporation, who is licensed in this Commonwealth as an auctioneer, must be designated as the auctioneer-of-record. The auctioneer-of-record is principally responsible for the conduct of the auctions of the partnership, association or corporation in accordance with this Act. A partnership, association or corporation auctioneer license becomes invalid if the license of the auctioneer-of-record is not renewed or is suspended or revoked.

Although the above section does not explicitly state that individuals who are employed by, or who are even principals in, an auction company can occupy those positions even though they are unlicensed—as long there is a licensed auctioneer who is principally responsible for the conduct of the auctions—it

certainly implies that much. If this is the case, then certainly it appears allowable under the Act to have unlicensed employees or partners whom, we must assume, would be involved in various aspects of running the auction company even though they are not licensed as auctioneers. Like the first section of the Act quoted, this particular section seems to focus upon the actual conducting of an auction and require a licensed auctioneer to perform this function and to be responsible for the actions of unlicensed employees and/or partners. It does not seem to contemplate that every employee or even officer or partner in an auction company will be licensed under the Act.

Additional support for our position can be found at § 734.20(a)(3), which is an enforcement section of the Act and which calls for a suspension or revocation of an auctioneer's license if he/she engages in a "continued or flagrant course of misrepresentation or making false promises through agents or apprentice auctioneers." This section certainly appears to contemplate, without any apparent disapproval, that a licensed auctioneer will be using unlicensed "agents" in furtherance of conducting an auction business.

A review of the whole Act leads us to conclude that the Act does not contemplate that every employee, or even principal of an auction company, must be licensed. Nor does the Act, in our opinion, prohibit unlicensed individuals from performing acts facilitating or supporting the conducting of an auction. Rather, we read the Act to require a licensed individual to actually conduct the auction and to be responsible for the actions of unlicensed support people in setting up and conducting auctions. Given this conclusion the entry of summary judgment must be vacated and the case remanded for a continuation of proceedings.[2]

1. Although we are unfamiliar with the conducting of auctions and the various personnel requirements for holding one, we can glean from Mr. Baer's deposition that Ritchie Bros. routinely utilized legal advisors, accounting people and an advertising department in preparing for an auction, and often needed logistical people at the auctions as well as someone taking down bids and results. Of course, the lower court's and appellee's position begs the question, for an individual who assists in the conducting of an auc-

tion what level of involvement requires a license and what does not?

2. It is often our task to interpret our legislature's laws consistent with what we perceive to be the law's intent. We have done this in the present case and believe that we have reached a result consistent with the Act's intent. However, the legislature is empowered to amend the Act to clarify its intent relative to the situation presented here. Should the legislature believe that we

Judgment vacated, remanded for continuation of proceedings. Jurisdiction relinquished.

have erred in our interpretation we trust it will amend the Act to clarify its position and prevent any additional question in the future.